Carroll,
June, 1895.

### ABBOTT & a. *v.* WOLFEBOROUGH SAVINGS BANK.

Special depositors of a savings bank who did not participate in its earnings are general creditors whose claims are to be paid in full, although such deposits were received without authority.

PETITION, of Sewall W. Abbott and fourteen others against the Wolfeborough Savings Bank, praying that the bank be ordered to pay the plaintiffs the amount of certain special deposits in full. The bank commissioners, to protect the general depositors, appear to oppose the petition. Facts found by the court.

In October, 1893, an injunction against the bank was granted by the supreme court on application of the bank commissioners. At that time the plaintiffs had certain sums on deposit with the bank as special deposits, and held pass-books marked "special." The deposits were not made as savings-bank deposits, and no interest or dividends thereon were claimed or paid. The treasurer paid out the money, or gave a check on a Boston bank,

whenever it was called for. There was no vote of the directors on the matter. The money received went into the general funds of the bank, and there is nothing on the cash book to indicate what persons are special depositors.

One of the bank commissioners testified to a conversation with the treasurer of the bank prior to January 1, 1893, in which he told the latter that the bank could not take special deposits, citing the opinion of the attorney-general in the Bank Report of 1890; and to another conversation in which the treasurer was told that the bank had no right to take special deposits as a bank of discount. The bank commissioners contend that private banking in a savings bank is forbidden by P. S., *c.* 165, *s.* 10, and that the receipt of the special deposits was in violation of the by-laws of the bank.

*Sewall W. Abbott*, for the plaintiffs.

*Bank Commissioners*, for the defendants.

BLODGETT, J.   In the view most unfavorable to the plaintiffs, no ground appears which authorizes the bank to keep without repayment any part of the money received from them. Doubtless the power of savings banks, in common with other corporations, is limited by the purposes for which they are created and by those which are named in the charter or act authorizing their existence; but even admitting that the receiving of the plaintiffs' deposits in the manner detailed in the case was foreign to the purposes of the bank's creation, unauthorized by its legalized powers, and within the prohibition of the statute (P. S., *c.* 165, *s.* 10), yet, as the deposits went into the general fund and to the use and benefit of the bank (that is to say, to the use and benefit of the general depositors, who are in fact the bank), well established principles require that a recovery should be allowed for the full amount of such deposits.

The transactions were in the nature of loans. The true relation between the parties is that of debtor and creditor. The plaintiffs' money when deposited became the money of the bank, and they became its creditors in every sense and for all purposes. Having no share or interest in the profits or earnings of the bank, the plaintiffs are not liable to be subjected to any part of its losses so long as the assets are sufficient to pay its debts. The general depositors cannot shift upon them any share of the burden which properly rests upon themselves alone. As owners of the bank, and of which they are not creditors in a general sense or for all purposes, the general depositors, who alone are entitled to share in the bank's profits, must bear its losses, and can rightfully claim such assets only as may remain after pay-

ment of the corporate debts. In brief, the general depositors in a savings bank stand in the same relation to its assets as stockholders to banks of discount (*Cogswell* v. *Savings Bank*, 59 N. H. 43, 45), and the standing of special depositors, like the plaintiffs, in the former, corresponds to that of ordinary business depositors in the latter, whose deposits are subject to payment on call.

The doctrine of *ultra vires* is no defence in this case, nor, if it can be held applicable to the facts, is the prohibition of private banking. By taking the plaintiffs' money, converting it to the bank's use, and enjoying its gratuitous benefit, the bank is now equitably and legally estopped to deny its liability to repay the money, whether the taking was with or without authority. *Rich* v. *Errol*, 51 N. H. 350, 360, 361; *West* v. *Errol*, 58 N. H. 233, 234; *Cogswell* v. *Savings Bank, supra; Conn. River Bank* v. *Fiske*, 60 N. H. 363, 369, 370; *Norton* v. *Bank*, 61 N. H. 589, 590, 593; *Railroad* v. *Railroad*, 66 N. H. 100, 126, 127, 131, 132.

*Petition granted.*

CLARK, J., did not sit : the others concurred.